PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-2113, 09-3520,
10-1390 and 10-1391
_____

JEAN ANTOINE DENIS,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

Petitions for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A091-357-312)
Immigration Judge:  Honorable Walter A. Durling
_____

Argued October 26, 2010

Before:  McKEE, Chief Judge, SLOVITER and
RENDELL, Circuit Judges

(Filed:  January 26, 2011)
_____

Jonathan J. Li, Esq.
Joseph R. Wallin, Esq.    **[ARGUED]**
Gibson, Dunn & Crutcher
200 Park Avenue, 47th Floor
New York, NY  10166
    *Counsel for Petitioner*

Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Ann C. Varnon, Esq.
Kelly J. Walls, Esq.    **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
    *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Jean Antoine Denis petitions for review of the determination of the Board of Immigration Appeals ("BIA") that his conviction for tampering with physical evidence under New York law constituted an aggravated felony and a particularly serious crime, subjecting him to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), and rendering him ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3). Denis also contends that he received ineffective assistance of

2

counsel and should have been found eligible for deferral of removal pursuant to the Convention Against Torture ("CAT"), 8 C.F.R. § 208.17.[1]

We conclude that the BIA correctly determined that Denis's conviction constituted an aggravated felony and a particularly serious crime, and that Denis is ineligible for deferral of removal.

Background & Procedural History

Denis, a native and citizen of Haiti, entered the United States unlawfully in 1985, and adjusted his status to lawful permanent resident in 1992. Prior to emigrating from Haiti, Denis was a police officer under Francois Duvalier's regime, and served on the security detail for Duvalier's motorcades, which were widely televised and photographed in Haiti. Denis asserts that after he objected to the human rights abuses perpetrated by others in Duvalier's police force, he was forced to flee Haiti due to concerns for his safety. After

---

[1]Denis petitions for review of four orders issued by the BIA: (1) a September 17, 2007 decision reissuing the BIA's August 8, 2005 summary affirmance of the IJ's denial of deferral of removal under the CAT and order of removal; (2) a November 13, 2007 decision upholding the IJ's finding of removability and denial of CAT protection, but granting and remanding for adjudication Denis's withholding of removal application; (3) a March 18, 2009 decision affirming the BIA's November 13, 2007 aggravated felony finding and upholding the denial of withholding of removal and CAT protection; and (4) a July 29, 2009 decision denying Denis's motion to reconsider the BIA's March 18, 2009 decision.

arriving in the United States, Denis continued to support the democratic movement in Haiti associated with Jean-Bertrand Aristide.

In the United States, Denis eventually started and owned a business that provided a variety of services, including selling insurance, notarizing documents, and preparing income tax returns. On November 9, 1998, Denis had an altercation with a female client regarding an allegedly outstanding debt of $300 owed by Denis to the client. The client visited Denis at his office, bit him and placed him in a chokehold; when Denis resisted, the client slipped, landed on her head, and died instantly. Denis panicked and hid the body with the assistance of an associate.

Because the victim's body was stiff and her legs did not fit in the bag Denis intended to use to carry the victim to his car, Denis dismembered her legs and one of her arms with a machete from his office. After transporting the body in the trunk of his car to his house, Denis took the body to the basement and left the victim there for approximately two days. He then returned to his office and cleaned up the victim's blood. Subsequently, Denis and his associate dug through the cement floor of Denis's garage, placed the body in a suitcase in the hole, covered the suitcase with dirt, and poured cement over the buried corpse.

Denis's associate eventually revealed the occurrence of the crime, and the police arrested Denis on December 15, 1998, charging him with second degree murder and tampering with physical evidence. On June 29, 1999, a jury found Denis guilty of second degree manslaughter, in

4

violation of New York Penal Law ("NYPL") § 125.15(1),[2] and of tampering with physical evidence, in violation of NYPL § 215.40(2).[3] Due to the significant aggravating facts associated with the aftermath of the fatal attack, the judge sentenced Denis to the "absolute maximum sentence for his conduct." (Administrative Record ("A.R.") at 1170.) Denis received an indeterminate sentence of two-and-two-thirds years to eight years for manslaughter, and an indeterminate sentence of one-and-one-third years to four years for the tampering with physical evidence conviction. Denis served a total of seven years in prison and was released in December 2006. He was then placed in federal immigration detention and placed on supervised released in April 2010.

In June 2004, while Denis was incarcerated for the state convictions, the Bureau of Immigration and Customs Enforcement ("ICE") issued a Notice to Appear to Denis, charging him with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction for an aggravated

---

[2]Section 125.15(1) provides in pertinent part that "[a] person is guilty of manslaughter in the second degree when . . . [h]e recklessly causes the death of another person . . . ." N.Y. Penal Law §125.15 (McKinney 2009).

[3]Section 215.40(2) provides: "Believing that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person." N.Y. Penal Law § 215.40(2) (McKinney 2009).

felony,[4] as defined in 8 U.S.C. § 1101(a)(43)(S), namely, an offense relating to obstruction of justice for which the term of imprisonment is at least one year.[5] Denis appeared with his accredited representative before the immigration judge ("IJ") on November 30, 2004, admitted the truth of the factual allegations, but denied removability. He offered testimony as to the circumstances of the crime, explaining that he could not "just throw [the victim's] body in the water or somewhere" because his fingerprints were on the body. (A.R. at 782-84.) Specifically, Denis worried that he "might have a problem with the police if they found [the body]," and decided to transport it from his office in Brooklyn, New York to his house in Queens, New York. At a continued hearing on February 23, 2005, Denis moved for withholding of removal and CAT protection, arguing that he would face persecution if he returned to Haiti due to his previous role as a bodyguard to the Duvalier regime. The IJ sustained the aggravated felony ground of removability and denied Denis's request for CAT withholding of removal on April 26, 2005. After a timely appeal, the BIA affirmed without opinion the IJ's decision on August 8, 2005. Denis timely petitioned for review before the United States Court of Appeals for the Second Circuit on

---

[4]Denis was not charged with removability for his manslaughter conviction, and we do not consider that conviction in this appeal.

[5]ICE further charged Denis with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(i), as an alien convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed. ICE subsequently withdrew this charge, and it does not factor in our analysis.

6

October 17, 2007, which petition was transferred to this Court on February 18, 2010.[6]

In extensive subsequent proceedings, Denis challenged the IJ's and BIA's rulings holding that Denis's crime of conviction constituted an aggravated felony and a particularly serious crime; he further disputed the decision as to his ineligibility for CAT relief. The BIA affirmed the IJ's decision that Denis committed an aggravated felony and the IJ's subsequent decision finding that Denis's felony constituted a particularly serious crime. The BIA also affirmed the IJ's determination that in spite of receiving ineffective assistance of counsel, the deficiency did not prejudice Denis as he failed to demonstrate eligibility for CAT relief.[7] Denis petitioned this Court for review of both of

---

[6]Denis's proceedings were originally held in Batavia, New York in light of his incarceration in Fishkill, New York. Upon completion of his criminal sentence, his proceedings were transferred to the immigration court in York, Pennsylvania subsequent to his custodial transfer to York County Prison.

[7]After the BIA remanded his case to the IJ, Denis filed a motion on December 17, 2007 with the BIA to reopen proceedings based on the allegedly ineffective assistance of counsel in failing to object to the initial IJ's misapplication of an incorrect legal standard to Denis's application for relief under the CAT. The BIA forwarded the motion to reopen to the IJ to be considered in tandem with its November 13, 2007 remand order. The IJ agreed with Denis that his counsel had been ineffective, and permitted Denis to augment the record as to his CAT claim and granted a new hearing as to whether

the BIA's latter decisions, and the Court consolidated the petitions for review.

In this petition for review, Denis contends that his crime of conviction is not an aggravated felony and should not constitute a particularly serious crime; he further alleges that based on his counsel's ineffective assistance, he was found ineligible for CAT relief without due process. Each assertion implicates "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), and we review the BIA's legal determinations *de novo*, subject to *Chevron* principles of deference. *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir. 2008) (citing *Chevron*, 567 U.S. at 844); *Kang v. Att'y Gen.*, 611 F.3d 157, 163 (3d Cir. 2010). We will address each argument in turn.[8]

---

Denis's present medical condition would likely lead to his torture as a deportee. Denis contended that upon deportation, he would lose access to his medicine and become symptomatic for hyperthyroidism and hypertension, which would render him mentally ill and more likely to be intentionally mistreated. Following the merits hearing on October 9, 2008, the IJ denied Denis's CAT application as insufficient. Denis appealed the decision to the BIA, which affirmed the decision on March 18, 2009, and denied Denis's subsequent motion to reconsider. Denis subsequently petitioned this Court for review.

[8]The BIA exercised jurisdiction pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15, and had jurisdiction over Denis's motion to reconsider under 8 C.F.R. § 1003.2(b). We exercise jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

8

Discussion

## I. "Aggravated Felony" Determination Pursuant to 8 U.S.C. § 1101(a)(43)(S)

Denis contends that his conviction for tampering with physical evidence under NYPL § 215.40(2) does not constitute an aggravated felony for purposes of 8 U.S.C. § 1101(a)(43)(S). The Attorney General counters that Denis's state conviction qualifies as an aggravated felony because it was an offense relating to obstruction of justice, warranting his removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Under the Immigration and Nationality Act ("INA"), an aggravated felony is defined to include "an offense relating to obstruction of justice . . . for which the term of imprisonment is at least one year." § 1101(a)(43)(S). Because Denis's minimum term of imprisonment exceeded one year, his violation of NYPL § 215.40(2) qualifies as an aggravated felony and renders him removable if his crime of conviction "relat[es] to obstruction of justice."

Our analysis as to whether a particular state conviction constitutes an aggravated felony under the INA usually follows the "formal categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575 (1990); that is, we "look to the elements of the statutory state offense, not to the specific facts, reading the applicable statute to ascertain the least culpable conduct necessary to sustain conviction under the statute." *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 466 (3d Cir. 2009) (citing *Knapik v. Ashcroft*, 384 F.3d 84, 89 (3d Cir. 2004)) (internal quotations omitted); *see also Restrepo v. Att'y Gen.*, 617 F.3d 787, 791 (3d Cir. 2010) ("[T]he categorical approach prohibits consideration of evidence

9

other than the statutory definition of the offense, thus precluding review of the particular facts underlying a conviction."). If the elements of the aggravated felony generic crimes enumerated in the federal statute are the same as or broader than the elements of the specific criminal statute of conviction, then the specific crime of conviction categorically qualifies as an aggravated felony. *See, e.g.*, *Garcia v. Att'y Gen.*, 462 F.3d 287, 291 (3d Cir. 2006).

Where, however, "'a statute criminalizes different kinds of conduct, some of which would constitute [aggravated felonies] while others would not, the court must apply a modified categorical approach by which a court may look beyond the statutory elements to determine the particular part of the statute under which the defendant was actually convicted.'" *Restrepo*, 617 F.3d at 791 (*quoting United States v. Stinson*, 592 F.3d 460, 462 (3d Cir. 2010)). In such instances, "we have conducted a limited factual inquiry, examining the record of conviction for the narrow purpose of determining the specific [elements] under which the defendant was convicted." *Jean-Louis*, 582 F.3d at 466 (*referencing Singh v. Ashcroft*, 383 F.3d 144, 162 (3d Cir. 2004)).

Here, we will employ the categorical approach in order to determine whether Denis's crime of conviction qualifies as an aggravated felony under the INA. The elements of the state and federal offenses – and not the individual facts or circumstances – are determinative to our analysis. Denis argues that, in applying the categorical approach, the elements that need to be proven for his conviction under NYPL § 215.40(2) do not "match" those of the comparable federal crime because the latter is limited to

10

interference with judicial proceedings, while one can be convicted under the New York statute for interfering or believing to interfere with a broader range of "official" proceedings. However, unlike other subsections of § 1101(a)(43) that define "aggravated felony" by equating a crime of conviction with a particular federal generic crime element by element – such as 26 U.S.C. § 5861(firearms offenses), 18 U.S.C. § 2251 (child pornography), or 26 U.S.C. § 7201 (tax evasion) – subsection (S) of § 1101(a)(43) is more descriptive in nature and, thus, slightly more expansive. The statutory text states that aggravated felonies include any offense "*relating to* obstruction of justice." As such, rather than ascertaining whether the elements of a state crime of conviction match the elements of a generic federal offense with precision, we must only decide that the state conviction "relates to" the offense criminalized by § 1101(a)(43)(S), namely, obstruction of justice. Thus, the fact that the elements do not precisely "match" each other is not determinative.

The meaning of the phrase "relating to obstruction of justice" and its application here present issues of first impression in our Court. The BIA, however, has issued a precedential decision analyzing this phrase, *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (BIA 1999). There, the Board determined that the federal crime of misprision of felony, 18 U.S.C. § 4, did not constitute an aggravated felony, as it did not sufficiently "relate to"[9] obstruction of justice. *Id.* at 894. The BIA set forth a specific analytic path to be used in determining whether an offense relates to obstruction of

---

[9]We use the terms "relating to" and "relate to" interchangeably throughout this Opinion.

11

justice; namely, the crime of conviction must contain a "critical element" – "an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." *Id.*

The threshold issue we must address is the appropriate level of deference we should give to the BIA's interpretation of the phrase "relating to obstruction of justice," which requires the presence of this critical element in the crime of conviction. The general question of the deference we owe to an agency's – and specifically to the BIA's – statutory construction of the relevant provision is a matter of some confusion. *See, e.g.*, *Patel v. Ashcroft*, 294 F.3d 465, 467 (3d Cir. 2002) (noting that *Chevron* deference to administrative interpretation of statute yields to *de novo* review of "legal issues that turn on a pure question of law not implicating the agency's expertise," but declining to state whether deference should be afforded to BIA's interpretation of "aggravated felon"); *Drakes v. Zmiski*, 240 F.3d 246, 250-51 (3d Cir. 2001) (finding that BIA's definition of "relating to . . . forgery" under § 1101(a)(43)(R) constituted a question of law, and fell "somewhere between" the deference owed under *Chevron* and "a pure question of statutory construction for the courts to decide") (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999), and *Sandoval v. Reno*, 166 F.3d 225 (3d Cir. 1999)). *See also Coronado-Durazo v. INS*, 123 F.3d 1322, 1326-27 (9th Cir. 1997) (Farris, J., dissenting) (highlighting disagreement as to appropriate level of deference owed to BIA's interpretation of "relating to" in INA).

On the one hand, support is easily found for the proposition that we are to engage in *de novo* review of aggravated felony determinations. *See, e.g.*, *Henry v. Bureau*

*of Immig. & Customs Enforcement*, 493 F.3d 303, 306 (3d Cir. 2007) (exercising plenary review and noting that "[w]e do not defer to the BIA's determination of whether a crime constitutes an aggravated felony"); *Bobb v. Att'y Gen.*, 458 F.3d 213, 217 n.4 (3d Cir. 2006) ("Although we give *Chevron* deference to the BIA's interpretation of the aggravated felony provisions of the INA if we determine that the statute is ambiguous, the BIA is not entitled to *Chevron* deference as to whether a particular federal criminal offense is an aggravated felony.") (internal citation omitted); *Yong Wong Park v. Att'y Gen.*, 472 F.3d 66, 71 (3d Cir. 2006) ("[N]either the Attorney General nor the BIA . . . 'is entitled to *Chevron* deference as to whether a particular federal offense is an aggravated felony.'") (citation omitted). *De novo* review is customary where the issue is one that dictates our subject matter jurisdiction pursuant to 8 U.S.C. § 1252 (a)(2)(c), and is a legal issue as to removability. *See Patel*, 294 F.3d at 467; *Lee v. Ashcroft*, 368 F.3d 218, 221-22 (3d Cir. 2004) ("We apply *de novo* review to this purely legal question of statutory interpretation [of aggravated felony under § 1101(a)(43)(M)(i)] that governs our own jurisdiction."); *Valansi v. Ashcroft*, 278 F.3d 203, 207 (3d Cir. 2002) ("Because we are determining a purely legal question, and one that governs our own jurisdiction, we review *de novo* whether the petitioner's conviction qualifies as an aggravated felony."); *Solorzano-Patlan v. INS*, 207 F.3d 869, 872 (7th Cir. 2000) ("[B]oth our jurisdiction . . . and the merits of the appeal turn on the question of whether [the petitioner] is an aggravated felon, a decision we review de novo.").

Furthermore, if the issue turns on the meaning of a federal statute other than the INA, we possess the requisite expertise to interpret a federal criminal statute such that no

13

deference is due.  *See Tran v. Gonzales*, 414 F.3d 464, 467 (3d Cir. 2005) ("The interpretation of criminal statutes is a task outside the BIA's special competence and congressional delegation, while it is very much a part of this Court's competence.") (citation omitted); *Yong Wong Park*, 472 F.3d at 71 ("[T]he Attorney General has no particular expertise in defining a term under federal law, yet it is 'what federal courts do all the time.'") (quoting *Drakes*, 240 F.3d at 251).

On the other hand, we have also recognized that in certain instances some deference to the agency's view as to what constitutes an aggravated felony is warranted.  We have stated that if we cannot ascertain on our own the meaning of a statutory phrase by its plain terms, statutory context, or by resort to legislative history, we will defer to the agency's view.  *See, e.g.*, *Restrepo v. Att'y Gen.*, 617 F.3d 787, 794-95 (3d Cir. 2010) (observing that the phrase "sexual abuse of a minor" in § 1101(a)(43)(A) "is most assuredly not clear and unambiguous," and "leaves us in a state of interpretative uncertainty," warranting deference to the BIA's reasonable interpretation of the phrase); *Valansi*, 278 F.3d at 208 ("Despite our exercise of *de novo* review, we will give deference to the agency's interpretation of the aggravated felony definition if Congress's intent is unclear.").  This will occur if there is a lack of clarity, or outright ambiguity, or if the agency has "filled a gap" in the statute.  *See Augustin v. Att'y Gen.*, 520 F.3d 264, 268 (3d Cir. 2008) ("When Congress has left a gap in a statute, implicitly leaving the administering agency responsible for filling that gap, 'a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.'") (citation omitted).  Moreover, where the statutory provision implicates the agency's concern

14

with foreign relations and diplomatic repercussions, the Supreme Court has instructed that the BIA, and not the courts, should resolve any ambiguity. *Aguirre*, 526 U.S. at 422; *Patel*, 294 F.3d at 467-68 ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions.").

The instant petition for review does not present an obscure ambiguity or a matter committed to agency discretion. Rather, the phrase "relating to obstruction of justice" in Section 1101(a)(43)(S) includes two discrete phrases – "relating to" and "obstruction of justice" – both of which are capable of definition. As to the latter, Title 18 of the U.S. Code contains a listing of crimes entitled "obstruction of justice," permitting us to easily determine the types of conduct Congress intended the phrase to encompass. We noted in *Tran* that construction of the criminal provisions in Title 18 "is a task outside the BIA's special competence and congressional delegation, while it is very much a part of this Court's competence." 414 F.3d at 467 (citing *Francis v. Reno*, 269 F.3d 162, 168 (3d Cir. 2001)). Similarly, we have often discussed the meaning of the phrase "relating to" in Section 1101(a)(43), observing that the phrase is to be read expansively and "must not be strictly confined to its narrowest meaning." *Drakes*, 240 F.3d at 249; *see also Yong Wong Park*, 472 F.3d at 72 (finding Congress's use of "relating to" "critical," "evidenc[ing] an intent to define [the listed offenses] in [their] broadest sense").[10]   Indeed, unless

---

[10]The Ninth Circuit Court of Appeals likewise explained that Congress's use of "relating to" in subsection (R) "necessarily" signaled an intent to cover "a range of

the words "relating to" are of no effect, they must be construed to encompass crimes other than those specifically listed in the federal statutes. *See Kamagate v. Ashcroft*, 385 F.3d 144, 154 (2d Cir. 2004) (observing that the Supreme Court previously rejected a narrow construction of the phrase, and defined "relating to" as follows: "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with") (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)); *see generally United States v. Miller*, 527 F.3d 54, 62-63 (3d Cir. 2008) ("[L]egislative enactments should not be construed to render their provisions mere surplusage."). Accordingly, we conclude that our review here is *de novo* and we owe no deference to the BIA's reasoning or definition.[11]

---

activities beyond those of counterfeiting or forgery itself." *Albillo-Figueroa v. INS*, 221 F.3d 1070, 1073 (9th Cir. 2000).

[11]Notably, the Ninth and Fifth Circuit Courts of Appeals followed a deferential approach in applying the statutory provision before us, examining whether the Board's reasoning – as set forth in *Espinoza* – resulted in a permissible construction of the language of the INA under *Chevron*. *See Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1086 (9th Cir. 2008); *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 861 (9th Cir. 2008); *United States v. Gamboa-Garcia*, 620 F.3d 546, 549-50 (5th Cir. 2010); *Alwan v. Ashcroft*, 388 F.3d 507, 514 (5th Cir. 2004). Relying on *Aguirre*, both courts concluded that the phrase "offense relating to obstruction of justice" lacked a clear meaning, and therefore deferred to the BIA's interpretation of subsection (S). In *Aguirre*, however, the phrase at issue – "serious nonpolitical crime" – was viewed by the Supreme Court as pertaining to

16

Although we do not defer to the BIA here, we will discuss its approach to resolving the instant matter, as it bears some similarities to our own. Relying on its previous precedential decision in *Espinoza*, the BIA concluded that the elements of Denis's offense of conviction required "an affirmative and intentional attempt, motivated by a specific intent to, interfere with the process of justice." (J.A.-12.) As this element was present in the New York crime, Denis was found to be an aggravated felon, and removable by virtue of Section 1227(a)(2).

In *Espinoza*, the BIA decided that misprision of felony did not constitute a crime "relating to" obstruction of justice. 22 I. & N. Dec. at 892. The Board explored the elements of misprision and compared them to the elements of the federal offenses included in the list of crimes labeled "obstruction of justice" in 18 U.S.C. §§ 1501-1518. 22 I. & N. Dec. at 892. The BIA found Section 1503 inapplicable to misprision of a felony since it does not "require as an element either active

the Executive Branch's exercise of "especially sensitive political functions that implicate questions of foreign relations." 526 U.S. at 422. In contrast, here, the phrase "relating to obstruction of justice" bears none of the same implications. *See Yong Wong Park*, 472 F.3d at 70 (observing that *Aguirre*'s foreign policy considerations "motivating that deference are largely absent" in the § 1101(a)(43) context). More importantly, the instant phrase is readily definable, unlike "serious nonpolitical crime." As we already noted, we are well-equipped to interpret and apply the statutory language of Title 18 on our own, and will not defer to the Board's view.

interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice." *Id.* The BIA reasoned that "Congress did not adopt a generic descriptive phrase such as 'obstructing justice' or 'obstruct justice,' but chose instead a term of art utilized in the United States Code to designate a specific list of crimes." *Id.* at 893. Noting that the United States Code "delineates a circumscribed set of offenses that constitute 'obstruction of justice,'" the agency articulated its belief that not "every offense that, by its nature, would tend to 'obstruct justice' is an offense that should properly be classified as 'obstruction of justice.'" *Id.* at 893-94. "To include all offenses that have a tendency to, or by their nature do, obstruct justice would cast the net too widely." *Id.*

The BIA focused on "the nature of the underlying offense," namely, misprision of felony, and concluded that the conviction for misprision did not relate to obstruction of justice because it was "separate and distinct from the crimes [actually] categorized as 'obstruction of justice.'" *Id.* at 896. Indeed, misprision of felony and obstruction of justice are treated as separate offenses under federal law. *Id.* at 894. Importantly, the Board also noted that misprision lacked the "critical element" of an obstruction of justice offense – "an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." *Id.* at 894.

While we do consider the elements of a crime in deciding whether a conviction is "related to" another offense, *see, e.g.*, *Drakes*, 240 F.3d at 250 (examining distinct elements of forgery crimes in several jurisdictions for purposes of Section 1101(a)(43)(R) determination), we have also held that the crimes of conviction can be "related to" a

listed offense without containing what might be viewed as an essential element. In *Bobb*, we addressed whether a conviction for forging a check in violation of 18 U.S.C. § 510(a)(2) constituted an offense "related to" forgery under Section 1101(a)(43)(R). 458 F.3d at 219-20. We stated that Congress intended to define forgery in its broadest sense by using the language "relating to":

> The term "relate" means "to show or establish a logical or causal connection between." Subsection (R) thus encompasses conduct beyond the traditional definition of forgery, and includes criminal conduct that is causally connected to forgery, but may lack as an essential element an intent to defraud or deceive.

458 F.3d at 219. We remarked that the example of Section 510(b), which criminalizes the knowing exchange of stolen or forged Treasury instruments, represented a good example of an offense "related to" forgery, even though it lacked as an element an intent to defraud or deceive. *Id.* ("[I]f [Congress] had used the language 'forgery offense' instead of 'related to . . . forgery' – then [the narrow interpretation] would have merit."); *see also Drakes*, 240 F.3d at 250 (holding that forgery lacking an intent to defraud still "related to . . . forgery" under subsection (R)).

Similarly, in *Yong Wong Park*, we considered whether a conviction for trafficking in counterfeit items constituted an aggravated felony "relating to . . . counterfeiting" pursuant to subsection (R). 472 F.3d at 72. Finding the distinction between "counterfeiting" and "relating to . . . counterfeiting"

19

"critical," we opined that "considering the broad reach of the term 'relating to,' certainly a statute which prohibits the knowing use of a counterfeit mark is a statute which codifies an offense relating to counterfeiting." *Id.* ("Indeed, it is common for a federal criminal statute pertaining to counterfeiting to include as an element of the crime *either* the act of counterfeiting *or* the knowing use of the end product of an act of counterfeiting."). We concluded that the specific statute of conviction "was simply one of several federal criminal statutes which 'seeks to discourage [the act of] counterfeiting through the criminalization of the use of its end product.'" *Id.* (*quoting Albillo-Figueroa*, 221 F.3d at 1073).

Accordingly, our caselaw would seem to embrace a broader reading of "related to" obstruction of justice than that adopted by the BIA, which required the presence of a "critical element." To give effect to Congress's choice of language, a categorical matching of the elements of the offense of conviction with the elements of a federal law cannot be the sole test for determining whether a crime of conviction "relates to" a generic federal offense.[12] Indeed, we

---

[12]In this regard, we again depart from the view adopted by the Ninth and Fifth Circuit Courts of Appeals, which have read *Espinoza* to suggest that "the question whether a specific offense of conviction counts as an aggravated felony under § 1101(a)(43)(S) depends *exclusively* on whether 'the elements of the offense . . . constitute the crime of obstruction of justice *as that term is defined*' in" §§ 1501-1521. *Salazar-Luviano* , 551 F.3d at 861 (*quoting Espinoza*, 22 I. & N. Dec. at 893) (emphasis added); *see also Alwan*, 388 F.3d at 514 (finding that substantive offense of conviction categorically matched the elements of obstruction of justice under § 1503,

previously found that a "causal connection" may suffice to make the separate crimes related; the connection between a crime of forgery and the exchange of forged documents is a prime example. *See Bobb*, 458 F.3d at 219-220 ("Congress' choice of the word 'related to' was intended to capture certain criminal conduct . . . which does not contain any intent to deceive or defraud").

The parties to this petition focused extensively upon the elements of Denis's crime when compared to the crimes enumerated in the obstruction of justice section of Title 18. Each side proposed that deference is due, assuming that we would defer to the BIA's "critical element" approach in *Espinoza*. We conclude that their reasoning and focus is misguided. We need not determine the precise degree of similarity between the elements of Denis's offense and a

---

where "the defendant [was] convicted of a crime not expressly designated as obstruction"). Rather than treating the provisions in title 18 as merely guiding the analysis of whether a crime of conviction relates to obstruction of justice under § 1101(a)(43)(S), these decisions instead require that the elements of the crime categorically match the elements of the individual offenses listed in Section 1501 *et seq.* This interpretation effectively disregards Congress's decision to employ the expansive term "relating to" in subsection (S) and is unsupported by the plain language of the statute. "Unless the words 'relating to' have no effect, the enumerated crime . . . must not be strictly confined to its narrowest meaning." *Drakes*, 240 F.3d at 249 (citing *Ruiz-Romero v. Reno*, 205 F.3d 837, 840 (5th Cir. 2000) (noting that "related to" describes a class of crimes and does not constitute a restriction)).

listed federal crime. Rather, under our precedent, we will "survey the interrelationship between [the] two statutory provisions," *Bobb*, 458 F.3d at 214, and apply the phrase "relating to" broadly, seeking a logical or causal connection.[13] Here, that task is straightforward and the test is easily met.

Examining Denis's crime of conviction in relation to the federal obstruction of justice offenses codified in Section 1501 *et seq.*, we are convinced that Denis's conviction represented a crime relating to obstruction of justice. The two provisions most relevant to Denis's conduct are Sections 1503 and 1512(c). (J.A.-12.) Section 1503 contains a catchall provision prohibiting a person from "corruptly or by threats or force, or by any threatening letter or communication, influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence, obstruct or impede, the due administration of justice." 18 U.S.C. § 1503. Both

---

[13]Although we need not defer to the BIA's decision in *Espinoza*, even if we were to find § 1101(a)(43)(S) ambiguous and accorded *Chevron* deference, we would nevertheless find the Board's requirement of the "critical element" as the *sine qua non* of an aggravated felony an impermissibly narrow interpretation. As we stated in *Yong Wong Park* with respect to Section 1101(a)(43)(R), "there exist offenses 'related to' forgery which do not contain as an essential element an intent to defraud or deceive." 458 F.3d at 220. Similarly here, there may exist offenses causally related to obstruction of justice that do not necessarily contain "the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." *Espinoza*, 22 I. & N. Dec. at 893.

22

Denis's crime of conviction and this federal obstruction of justice provision, by their terms, proscribe any behavior that entails the use of force in an effort to impede or obstruct an official proceeding,[14] such as through evidence tampering. *See United States v. Jahedi*, 681 F. Supp. 2d 430, 439 (S.D.N.Y. 2009) (noting that courts consistently construe § 1503 to cover evidence tampering); *see also United States v. Rasheed*, 663 F.2d 843, 952 (9th Cir. 1981) (noting that concealment and destruction of documents satisfies § 1503). Thus, Denis's conviction for tampering bears a close resemblance to the federal obstruction of justice offense defined in Section 1503.[15]

---

[14]Title 18 defines official proceeding as "a proceeding before a judge or court of the United States . . . or a Federal grand jury . . . or a proceeding before a Federal Government agency which is authorized by law." 18 U.S.C. § 1515(a)(1).

[15]As noted above, while Section 215.40(2) has been interpreted by New York courts to apply regardless of whether the conduct interfered with a judicial proceeding or a police investigation, *see, e.g. People v. Berdini*, 845 N.Y.S.2d 717, 721 (N.Y. City Crim. Ct. 2007), and Section 1503 only pertains to obstruction of judicial proceedings, *United States v. Aguilar*, 515 U.S. 593, 599 (1995), this distinction does not defeat our "relating to" analysis, even if it could defeat a traditional categorical matching of the crime of conviction with a generic federal offense, *see Garcia*, 462 F.3d at 291. As discussed, our approach does not depend upon matching the elements of the state crime of conviction with the elements of Section 1503, and, instead, we only consider the provision to identify the nature of offenses classified as

Section 1512 provides similar reinforcement. This obstruction of justice provision prohibits in pertinent part alteration, destruction, mutilation, or concealment of any object that would "impair the object's integrity or availability for use in an official proceeding." 18 U.S.C. § 1512(c).[16] This subsection's focus on destroying or mutilating evidentiary items in anticipation of their potential production in a prospective proceeding is directly analogous, and thus, logically connected to Denis's state crime of conviction.[17] As such, Denis's offense "relat[es] to obstruction of justice" as

---

obstruction of justice under federal law for purposes of conducting the "relating to" examination.

[16]In contrast with Section 1503 and its limited application to judicial proceedings under *Aguilar*, Section 1512(f)(1) specifically notes that "an official proceeding need not be pending or about to be instituted at the time of the offense" for subsection (c) to govern a tampering offense.

[17]We need not resolve Denis's assertion that the current iteration of Section 1512(c) – which added the subsection on tampering with physical evidence – constitutes an impermissible retroactive application of an amended statute under *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). As with our review of Section 1503, we consider the amended Section 1512(c) solely to gauge Congress's conception of the scope of offenses that constitute obstruction of justice for purposes of deciding which offenses relate to the topic under Section 1101(a)(43)(S). As such, we do not actually rely upon 1512(c) to find that Denis's crime of conviction categorically matched the elements of the amended section.

24

that offense is defined in both federal statutes – Sections 1512(c) and 1503.

Because Denis's violation of NYPL § 215.40(2) relates to obstruction of justice and mandated a term of imprisonment of at least one year, it qualifies as an aggravated felony under § 1101(a)(43)(S). Accordingly, Denis's petition for review on this basis will be denied as we lack jurisdiction to review the BIA's final order of removal pursuant to Section 1227(a)(2)(A)(iii). 8 U.S.C. § 1252(a)(2)(C).

## II. "Particularly Serious Crime" Determination Pursuant to 8 U.S.C. § 1231(b)(3)

Denis next contests the BIA's affirmance of the IJ's ruling that Denis committed a "particularly serious crime," as codified in 8 U.S.C. § 1231(b)(3), and is thus ineligible for withholding of removal. Denis argues that the elements of his crime of conviction – as well as the actual underlying conduct – did not entail a crime against a person, and should not be deemed particularly serious. Denis also contends that in ruling on this issue, the IJ improperly considered evidence of alleged offenses of which Denis was acquitted. Finally, Denis argues that the IJ improperly placed the burden upon him to disprove that his offense was particularly serious. We reject each of Denis's contentions.

Section 1231 provides that while the Attorney General "may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country," § 1231(b)(3)(A), such withholding is unavailable "if the Attorney General decides that . . . the

25

alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States," § 1231(b)(3)(B). The Section further explains that "an alien who has been convicted of an aggravated felony . . . for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime." *Id.*; s*ee also* 8 C.F.R. § 1208.16(b). Here, Denis's sentence for an aggravated felony did not entail a minimum imprisonment of at least five years, rendering the conviction not particularly serious *per se*.

Unlike the commonly understood terms discussed above concerning the definition of an aggravated felony relating to obstruction of justice, there are no textual or contextual indicators in the INA as to "how the Board should determine whether an alien has committed a 'particularly serious crime' when a court has convicted the alien of an aggravated felony for which the court sentenced the alien to less than five years imprisonment." *Chong v. INS*, 264 F.3d 378, 387 (3d Cir. 2001). The statute itself expressly grants the Attorney General discretion to decide whether an alien committed a particularly serious crime; the Attorney General may "determin[e] that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." *Id.* (citing § 1231(b)(3)(B)(iv)); *see also Lapaix v. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010) ("When the offense in question is not a per se particularly serious crime, the Attorney General retains discretion to determine on a case-by-case basis whether the offense constituted a particularly serious crime."); *Singh v. Ashcroft*, 351 F.3d 435, 439 (9th Cir. 2003) ("[T]he Attorney General may determine that *any* aggravated felony, even one that results in a sentence

26

of less than five years, qualifies as particularly serious.") (emphasis in original). The statutory language "contains no limiting language restricting the Attorney General's discretion to label [ ] crimes as 'particularly serious' . . . [and] the long history of case-by-case determination of 'particularly serious crimes' counsels against [attempts] to craft a bright-line rule." *N-A-M v. Holder*, 587 F.3d 1052, 1076 (10th Cir. 2009). As in *Aguirre*, the provision of the INA here anticipates reliance on the expertise of the agency for a judgment as to "seriousness," as given meaning "through a process of case-by-case adjudication," 526 U.S. at 425; the application of this phrase is committed to the agency's reasoning and exercise of discretion. Accordingly, we will defer to the BIA's interpretation of the statutory text if it "is based on a permissible construction of § 1231(b)(3)(B)."[18] *Chong*, 264 F.3d at 387 (citing *Chevron*, 467 U.S. at 842-43); *see also Francois v. Gonzales*, 448 F.3d 645, 648 (3d Cir. 2006) ("We . . . will afford *Chevron* deference to the BIA's reasonable interpretations of statutes which it is charged with administering.").

---

[18]In reviewing the BIA's determination of particularly serious crime, we reiterate our previous conclusion that the statutory language of 8 U.S.C. § 1252, which limits judicial review of the Attorney General's discretionary decisions, is "insufficient to pull the 'particularly serious crime' determination out from the broad class of reviewable decisions that require the application of law to fact into the narrower class of decisions where judicial review is precluded by § 1252(a)(2)(B)(ii)." *Alaka v. Att'y Gen.*, 456 F.3d 88, 101-02 (3d Cir. 2006) (*citing* 8 U.S.C. § 1252(a)(2)(D)).

The BIA has taken a notably expansive view as to what can be considered in determining whether a crime qualifies as particularly serious. In *Chong*, we commented on that approach with approval:

> [C]onsideration of the individual facts and circumstances is appropriate . . . This inquiry does not involve an examination of the respondents' family or community ties, or the risk of persecution in the alien's native country. To make this determination, we look to the conviction records and sentencing information.

> Further, we do not engage in a retrial of the alien's criminal case or go behind the record of conviction to redetermine the alien's innocence or guilt.

264 F.3d at 388 (quoting *In re L-S*, 22 I. & N. Dec. 645, 651 (BIA 1999)). After our decision in *Chong*, the BIA provided more clarity as to the evidence that may be considered in deciding whether an offense is particularly serious. *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007). Further distancing the analysis from a categorical or structured approach, the BIA explained:

> If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of withholding of removal. On the other hand, once the elements of the offense are

examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction.

*Id.* (*citing L-S*, 22 I. & N. Dec. at 654-56). In other words, where the elements of the crime of conviction suggest that the crime could potentially qualify as particularly serious, the BIA "[does] not prohibit the examination of other evidence or indicate that only conviction records and sentencing information could be used." *Id.* at 344. In fact, the BIA emphasized that no decision "has ever suggested that the categorical approach, used primarily in determining removability, is applicable to the inherently discretionary determination of whether a conviction is for a particularly serious crime." *Id.*

Although the BIA will sometimes rely "exclusively on the elements of an offense" in exercising its discretion, it "generally examine[s] a variety of factors" and "see[s] no reason to exclude otherwise reliable information from consideration . . . once the nature of the crime, as measured by its elements, brings it within the range of a 'particularly serious' offense." *Id.* (*citing In re Babaisakov*, 24 I. & N. Dec. 306 (BIA 2007)); *In re Q-T-M-T-*, 21 I. & N. Dec. 639, 650-51 (BIA 1996) (applying categorical approach for case-by-case analysis based solely on the statutory elements of the offense). In such instances, IJs and the BIA "look 'to such factors as the nature of the conviction, the circumstances of

the underlying facts of the conviction, [and] the type of sentence imposed.'"[19] *Lapaix*, 605 F.3d at 1143-44 (quoting *In re Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982)); *see also Anaya-Ortiz v. Holder*, 594 F.3d 673, 677-78 (9th Cir. 2010) (same); *Tian v. Holder*, 576 F.3d 890, 897 (8th Cir. 2009) (same).

Pursuant to the above approach, before examining the individual facts and circumstances of a case, the BIA will first decide whether the elements of an offense "potentially bring the offense within the ambit of a particularly serious crime." *N-A-M-*, 24 I. & N. Dec. at 342. The BIA has consistently stated that crimes entailing or threatening to use physical force or violence against another person "are more likely to be categorized as particularly serious." *Id.*; *L-S-*, 22 I. & N.

---

[19]The BIA previously considered "whether the type and circumstances of the crime indicate that the alien will be a danger to the community" as the "most important[ ]" factor in the instant analysis. *In re Frentescu*, 18 I. & N. Dec. at 247. In *N-A-M-*, however, the BIA emphasized that its "approach to determining whether a crime is particularly serious has evolved since the issuance of [its] decision in [ ] *Frentescu*." 24 I. & N. Dec. at 342. "Once an alien is found to have committed a particularly serious crime, [the BIA] no longer engage[s] in a separate determination to address whether the alien is a danger to the community." *Id.* Instead, "the proper focus for determining whether a crime is particularly serious is on the nature of the crime and not the likelihood of future serious misconduct." *Id.* (citations omitted); *see generally Tian*, 576 F.3d at 897 (same). Therefore, neither the IJ nor the BIA, nor we, need opine as to Denis's potential danger to the community.

Dec. at 649; *In re LSJ*, 21 I. & N. Dec. 973, 974-75 (BIA 1997) (finding armed robbery with the threat of violence against several people particularly serious).[20] Here, Denis employs this line of reasoning to urge that because the victim was deceased when the tampering occurred, his crime cannot constitute a particularly serious crime because it was not committed against a person. This argument is unavailing.

The fact that crimes against persons are considered particularly serious does not suggest that other offenses – such as the crime of conviction here – cannot also be viewed as particularly serious. To decide, we look, as did the BIA, to all reliable evidence "in making a particularly serious crime determination." *N-A-M-*, 24 I. & N. Dec. at 342; *see* J.A.-22 (noting that the IJ properly reviewed "the respondent's testimony and other information outside the record of conviction").

---

[20]Analogously, our fellow Courts of Appeals regularly focus upon the use of force or violence against other persons in reviewing BIA decisions defining particularly serious crimes. *See, e.g.*, *Bosede v. Mukasey*, 512 F.3d 946, 951 (7th Cir. 2008) (observing that plaintiff can rebut presumption of particularly serious crime by establishing "the absence of any violence or threat of violence"); *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 109 (2d Cir. 2008) (noting that conviction for crime demonstrating propensity for violence is indicative of a particularly serious crime); *Yousefi v. INS*, 260 F.3d 318, 328 (4th Cir. 2001) ("When the crime is a against a person, the likelihood that the offense will be classified as a 'particularly serious crime' is increased."); *Ikharo v. Holder*, 614 F.3d 622, 633 (6th Cir. 2010) (same).

Here, the Board concluded that "in view of the gruesome brutality of the respondent's actions underlying the conviction (as graphically reflected in the respondent's testimony), we expressly reject the respondent's contention that the record of proceeding fails to establish" the particularly serious nature of his crime. (J.A.-22.) We find this a permissible reading and application of the phrase. Consideration of the "individual facts and circumstances" reveals that Denis tampered with physical evidence by violently dismembering and concealing his victim.[21] Moreover, the record confirms that Denis perpetrated the offense through the use of physical force. The BIA properly considered the nature of his acts and we will not disturb its determination that Denis's offense constituted a particularly serious crime.[22]

---

[21]*See In re Denis*, Decision and Order, J.A.-152 ("[R]espondent, in a grisly and wanton act, grossly disfigured his victim's body by hacking her legs off with a machete, took the body to his house when his wife and child were at home, and returned to clean up the crime scene.")

[22]Denis separately avers that the IJ improperly considered evidence of alleged offenses of which Denis was acquitted in deciding upon the particularly serious question. Citing our decision in *Alaka*, Denis claims that evidence of other bad acts or other convictions may not be considered in this analysis, and only evidence of the conviction's elements is appropriate. In so arguing, Denis mischaracterizes *Alaka*, which only provided that *dismissed* charges may not be considered in determining whether an offense was particularly serious. 456 F.3d at 108-09 ("[W]e can find no authority for the proposition that dismissed counts or crimes .

Denis's final argument as to the IJ's and BIA's purportedly improper placement of the burden of proof is similarly incorrect. The BIA stated in *N-A-M-* that "[i]t has been our practice to allow both parties to explain and introduce evidence as to why a crime is particularly serious or not." 24 I. & N. Dec. at 344. In this vein, the government advanced Denis's testimony and the record of conviction to demonstrate the particularly serious nature of the offense, while Denis provided no explanation to rebut this conclusion.[23] *See generally Bosede v. Mukasey*, 512 F.3d 645, 951 (7th Cir. 2008) (observing that plaintiff can rebut presumption of particularly serious crime by establishing "the absence of any violence or threat of violence"). On appeal, Denis merely stands upon the already rejected assertion that his crime did not involve an act "against a person" and thus did not bring it within the ambit of a particularly serious crime. We find no fault in this regard and no prejudice to

---

. . may be considered in determining whether a specific crime is a particularly serious crime") (quoting *Yousefi*, 260 F.3d at 329-30). Our review of the record does not support Denis's allegation that the IJ or the BIA relied on such dismissed charges in reaching its decision, and Denis advanced no evidence to substantiate this claim. Furthermore, as more thoroughly demonstrated in this section, the BIA may consider more than the mere elements of an offense in finding a conviction particularly serious.

[23]*See* 8 C.F.R. § 1208.16(d)(2) ("If the evidence indicates the applicability of one or more of the grounds for denial of withholding enumerated in the Act, the applicant shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.").

Denis in the IJ's proper review and consideration of all pertinent evidence as permitted by the BIA's controlling precedents.

As such, we are left with no doubt that the IJ and the BIA properly exercised their discretion in applying the legal standard to the instant facts in finding Denis's crime particularly serious. It follows that Denis's crime of conviction constitutes a particularly serious crime, and he is therefore ineligible for withholding of removal pursuant to Section 1231(b)(3)(B)(ii).

### III. Deferral of Removal Pursuant to the Convention Against Torture Determination

The final issues on appeal pertain to Denis's claim of entitlement to deferral of removal pursuant to the Convention Against Torture ("CAT"), 8 U.S.C. § 1231 note and 8 C.F.R. § 208.16. Denis contends that the BIA and the IJ failed to provide a full and fair rehearing of his CAT claim after the IJ determined that Denis was denied due process as a result of ineffective assistance of counsel. The IJ afforded Denis an opportunity to augment the record with further evidence, but limited the subsequent merits hearing to evidence of Denis's present medical condition. Denis also avers that he demonstrated eligibility for CAT relief because he will be singled out for torture due to his status as a former Duvalier regime officer and also due to his dependence upon hyperthyroid and hypertension medication, the absence of which may render him mentally ill and seemingly noncompliant with the prison guards. We will address these arguments in reverse order.

Our resolution of Denis's claims regarding the likelihood of torture is informed by our discussion in *Pierre v. Attorney General*, 528 F.3d 180 (3d Cir. 2008). *Pierre* addressed the petition of a Haitian alien for deferral of removal pursuant to the CAT on the basis that the alien would experience torture, extreme pain, and suffering if deported to a Haitian prison. *Id.* at 183-84. There we discussed the origins and policy underlying the CAT, namely a commitment "not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." *Id.* at 186 (quoting § 1231 note)). Consequently, deferral of removal is mandatory if a petitioner is able to show that he is more "likely than not" to be tortured. *Id.* at 186 (citing 8 C.F.R. § 208.17(a)).

35

Pursuant to the Attorney General's promulgated regulations setting forth the procedures by which individuals could seek relief under the CAT, an act constitutes torture solely if it is:

> intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her on a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Id.* at 189 (quoting 8 C.F.R. § 208.18(a)(1)). In light of this definition, we concluded in *Pierre* that "a petitioner cannot obtain relief under the CAT unless he can show that his prospective torturer will have the goal or purpose of inflicting severe pain or suffering." *Id.* at 190.

On the facts, we determined that Pierre would be imprisoned "because the Haitian government has a blanket policy of imprisoning ex-convicts who are deported to Haiti in order to reduce crime." *Id.* at 189; *see also Auguste v. Ridge*, 395 F.3d 123, 152 (3d Cir. 2005) (discussing indefinite detention of ex-convicts returned to Haiti). We further observed that "the lack of medical care and likely pain that Pierre will experience is an unfortunate but unintended consequence of the poor conditions in the Haitian prisons, which exist because of Haiti's extreme poverty." *Pierre*, 528

F.3d at 189; *see also Auguste*, 395 F.3d at 153 (same). Because Pierre "failed to show that Haitian officials will have the purpose of inflicting severe pain or suffering by placing him in detention upon his removal from the United States," "this unintended consequence is not the type of proscribed purpose contemplated by the CAT." *Id.* at 189, 190; *see also Gourdet v. Holder*, 587 F.3d 1, 3-4 (1st Cir. 2009) ("[T]he substandard prison conditions in Haiti did not constitute torture under the CAT.").

Similarly here, Denis failed to demonstrate that the Haitian prison officials will more likely than not specifically target him or intend to inflict pain on him because of potential symptoms resulting from his hyperthyroid and hypertension medical conditions. His unsupported speculation as to how he may appear or act, how the prison officials may potentially react, and the purported state of mind of the prison officials that may hypothetically inflict pain upon him, does not rise to the level of proof necessary to demonstrate that he will more likely than not be singled out for torture. Furthermore, Denis failed to substantiate his assertion that he would be singled out for torture by Haitian prison officials because of his unspecified role as a bodyguard for the Duvalier regime in the previous century. Indeed, Denis's assertions are "based on a chain of assumptions and a fear of what might happen, rather than evidence that meets [his] burden of demonstrating that it is *more likely than not* that [he] will be subjected to torture by, or with the acquiescence of, a public official . . . ." *In re M-B-A-*, 23 I. & N. Dec. 474, 479-80 (BIA 2002) (en banc) (emphasis in original). Accordingly, the BIA properly applied the standard for CAT and denied Denis's request for deferral of removal.

Our conclusion that Denis is ineligible for CAT relief informs our resolution of his due process claim. Although the IJ found that Denis's counsel provided ineffective assistance, we previously stated that "an alien claiming ineffective assistance of counsel in removal proceedings must, in addition to showing that his lawyer committed unprofessional errors, show that there was a 'reasonable likelihood that the result would have been different if the error[s] . . . had not occurred.'" *Fadiga v. Att'y Gen.*, 488 F.3d 142, 159 (3d Cir. 2007) (*quoting United States v. Charleswell*, 456 F.3d 347, 362 (2006)). In this vein, "to prevail on a procedural due process challenge to a decision by the BIA, an alien must make an initial showing of substantial prejudice." *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005) (*citing De Zavala v. Ashcroft*, 385 F.3d 879, 883 (5th Cir. 2004)). Mindful of our focus on substantial prejudice, we reasoned that where an alien "cannot demonstrate that he was eligible for relief . . . under the CAT, no procedural due process claim can lie." *Id.*

Dennis cannot satisfy this standard. As we already decided, he failed to adduce evidence establishing that he would more likely than not be singled out for torture. His ineligibility for CAT relief wholly undermines Denis's assertion that the ineffective assistance of counsel caused substantial prejudice to his otherwise compelling claim. On this ground alone, his due process claim must fail.

Moreover, the BIA correctly rejected Denis's assertion that "deficient performance of the prior representative prevented him from introducing evidence that competent counsel would have otherwise discovered and marshaled in support of the respondent's claim." (J.A. 23.) Denis did not

identify "any specific evidence . . . that his prior representative failed to submit in support of the claim that would have 'likely changed the outcome of his initial removal proceedings.'" (J.A. 23.) Indeed, "the only evidence particular to [Denis that he] sought to submit in support . . . was evidence relevant to his medical conditions, and the [IJ] imposed no unreasonable limitation on [Denis's] opportunity to submit and develop such evidence." (*Id.*) Even in the absence of an entirely new hearing, Denis was given ample opportunity to supplement the record with additional allegations pertaining to his claims. Considering Denis's failure to adduce persuasive particularized evidence and to make an initial showing of substantial prejudice from the IJ's decision, the BIA's reasoning and decision are proper.

As a result, Denis's claim for relief under the CAT and his procedural due process claim for a new hearing fail.

Conclusion

For the foregoing reasons, we find no constitutional violation or legal error in the BIA's resolution of Denis's arguments. Accordingly, we will deny the petitions for review.