**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2995
_____

KESNEL SAINT FORT,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A209-866-636)
Immigration Judge:  John B. Carle

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 19, 2019
Before:  GREENAWAY, Jr., RESTREPO, and FUENTES, Circuit Judges

(Opinion filed: July 12, 2019)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Kesnel Saint Fort, a citizen of Haiti, petitions for review of a final order of removal. For the following reasons, we will deny the petition.

After living in Brazil for approximately three years, Saint Fort arrived in the United States in 2016. The Government charged him with removability as an arriving alien with no valid entry document. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). Based on his experiences in both Haiti and Brazil, Saint Fort applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). An Immigration Judge denied relief on May 24, 2017. On November 9, 2017, the Board of Immigration Appeals affirmed the denial of asylum and withholding as it pertained to Haiti. But the Board also concluded that "the record is not adequate for appellate review with respect to [Saint Fort's] claimed fear of torture in Haiti or Brazil or his claimed past persecution and fear of future persecution in Brazil for withholding of removal purposes." Accordingly, the BIA remanded the matter to the IJ for development of the record and consideration of those issues. On remand, Saint Fort provided additional testimony and submitted current country reports. On April 17, 2018, the IJ again denied relief.[1] In an order dated August 29, 2018, the BIA affirmed and adopted the IJ's decision, and dismissed the appeal. Saint Fort filed a pro se petition for review.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). Because the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ's determinations, we

---

[1] Saint Fort filed a petition for review of the IJ's decision. In response, the Government filed a motion to dismiss, which we granted. See C.A. No. 18-1998 (order entered August 2, 2018).

2

review the decisions of both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (internal citation omitted). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001)).

To establish eligibility for asylum, Saint Fort needed to demonstrate either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Wang v. Gonzales, 405 F.3d 134, 138 (3d Cir. 2005). To establish eligibility for withholding of removal, he needed to demonstrate that it was more likely than not that his life or freedom would be threatened on account of a protected ground. See 8 U.S.C. § 1231(b)(3)(A); see also Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003);. To be eligible for withholding of removal under the CAT, "[t]he burden of proof is on the applicant … to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); see also Kamara v. Att'y Gen., 420 F.3d 202, 212-13 (3d Cir. 2005). Torture is defined as the intentional infliction of severe pain or suffering "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

## I. Haiti

In support of his claims, Saint Fort testified that a Haitian government official, Deputy Blaise, was interested in having a romantic relationship with a woman named Houdela, who was already dating Saint Fort. According to Saint Fort, Deputy Blaise believed that he could break up the relationship by injuring Saint Fort. Sometime between 2011 and 2012, individuals who operated under the command of Deputy Blaise used fists and sticks to beat Saint Fort, knocking out one of his teeth. In 2012, Deputy Blaise sent men to Saint Fort's house, where they destroyed a wall and beat him again. Deputy Blaise was present during both incidents. Saint Fort reported the attacks to the police, but no action was taken. In March 2013, a group of men attacked Saint Fort, who was cut on the leg by a machete. He escaped to a friend's house. The friend, a nurse, cleaned and bandaged the wound. The next month, Saint Fort and Houdela fled to Brazil. Meanwhile, in Haiti, Saint Fort's family moved to another town because they feared that their home would be destroyed. In addition, Saint Fort's uncle warned him that he was being sought in Haiti, and his brother observed Deputy Blaise at the airport when a large number of deportees returned by plane.

In his decision of May 24, 2017, the IJ concluded that Saint Fort was ineligible for asylum and withholding of removal because the incidents of harm that he described did not rise to the level of persecution and because he failed to show that he feared persecution on account of a protected ground. Substantial evidence supports the conclusion that the actions taken by Deputy Blaise were not on account of a protected

ground.[2]  See Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129 (3d Cir. 2009) ("[A] key task for any asylum applicant is to show a sufficient 'nexus' between persecution and one of the listed protected grounds.").  Saint Fort's past injuries and fear of future harm stem solely from a personal conflict with Deputy Blaise.  See Amanfi v. Ashcroft, 328 F.3d 719, 727 (3d Cir. 2003) (noting that "retaliation in response to a personal dispute" is not "a ground for asylum [or] withholding of removal").  Because Saint Fort failed to establish asylum eligibility, he also necessarily failed to satisfy the clear probability standard required for withholding of removal.  See Zubeda, 333 F.3d at 469-70.

Substantial evidence also supports the determination that Saint Fort's allegations about torture in Haiti are not sufficient for CAT relief.  The IJ concluded that Saint Fort did not suffer harm in Haiti rising to the level of torture.  As noted above, Deputy Blaise ordered his subordinates to beat up Saint Fort on several occasions.  Those beatings resulted in the loss of a tooth and a cut on his leg.  Deputy Blaise's men also destroyed a wall of Saint Fort's home.  Although these incidents are serious, they do not amount to the type of extreme cruel and inhuman treatment constituting torture.  See Shardar v. Ashcroft, 382 F.3d 318, 324 (3d Cir. 2004) (holding BIA did not err in determining that petitioner, who was "severely beaten," was not tortured); Jo v. Gonzales, 458 F.3d 104, 109 (2d Cir. 2006) (stating that "the concept of torture has its focus on injury to persons,

---

[2] In light of this determination, we need not address the IJ's alternative conclusion that Saint Fort was not eligible for asylum based on his experiences in Haiti because he had firmly resettled in Brazil, see INA § 1158(b)(2)(A)(vi); 8 C.F.R. § 1208.13(c)(2)(i)(B), and because Saint Fort was not eligible for an exception to the firm resettlement bar.  See 8 C.F.R. § 1208.15(a) & (b).

5

rather than on damage to property.").

In addition, the record does not compel the conclusion that Deputy Blaise would more likely than not torture Saint Fort upon his return to Haiti. As the IJ noted, Saint Fort only speculates that Deputy Blaise still works for the Haitian government and is still interested in harming him more than five years after Saint Fort left Haiti. See Denis v. Att'y Gen., 633 F.3d 201, 218 (3d Cir. 2011) (explaining that applicant's "unsupported speculation" about what he believed would happen to him if removed "does not rise to the level of proof necessary to demonstrate that he will more likely than not be singled out for torture."). Although Saint Fort's brother observed Deputy Blaise at the airport as a plane carrying deportees arrived, Saint Fort admitted that he is not sure that Deputy Blaise was looking for him. Also, Saint Fort claimed that he did not know whether his family had any problems with Deputy Blaise after they moved to a new town. Accordingly, the record does not compel the conclusion that Saint Fort is entitled to relief under the CAT.

## II. Brazil

While living in Brazil, Saint Fort was robbed four times. Two of the robberies occurred just after he had been paid his wages. In fact, one of the robberies was carried out by Saint Fort's co-workers. During one of the robberies, the perpetrators poured acid on his leg, but Saint Fort was not seriously injured because the acid did not soak through his pants. Saint Fort reported some of the robberies to the police, but they did not investigate. Saint Fort also claimed that, in addition to the robberies, a Brazilian man pulled a knife on him at a bus stop, but Saint Fort ran away and was not injured.

6

According to Saint Fort, these incidents occurred because of hostilities toward Haitians.

"[P]ersecution connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quotations omitted).  It "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id.  The isolated incidents in Brazil, which resulted in no injuries to Saint Fort, simply do not rise to the level of persecution.  See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (holding that "two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution.").  Furthermore, there is no evidence, beyond Saint Fort's speculation, that the perpetrators of these incidents targeted him because he is Haitian.  See Ndayshimiye, 557 F.3d at 128-29.  In addition, although the 2016 State Department Country Report on Human Rights Practices indicates that Haitians and other minorities face discrimination in Brazil, it also states that the Brazilian government worked to combat such mistreatment and provided social assistance to Haitian migrants.  Lastly, neither Saint Fort's description of the incidents in Brazil nor the background material demonstrate that it is more likely than not that he would be tortured if he were removed there.

For the foregoing reasons, we will deny the petition for review.