IMG3-003                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4823
_____

SEMIR MUJO MUSIC,
                                            Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                            Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A079-829-315)
Immigration Judge: Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 3, 2014

Before:  FUENTES, KRAUSE and COWEN, Circuit Judges

(Filed: November 3, 2014)
_____

OPINION[*]
_____

PER CURIAM

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Semir Mujo Music ("Music") petitions for review of the Board of Immigration Appeals' final order of removal. For the reasons that follow, we will deny the petition for review.

Music was born in Vlasenica in the former Yugoslavia in 1989; he is ethnically and religiously a Bosnian Muslim. He entered the United States in 2001 with his family as a refugee. His parents and siblings are now all lawful permanent residents, but Music was not able to similarly adjust his status because, on December 4, 2012, he was convicted of possession with intent to deliver cocaine, in violation of 35 Pa. Cons. Stat. Ann. § 780-113(a)(30). Music subsequently was sentenced to a term of imprisonment of 9-23 months, to be followed by three years of probation. He does not dispute that he is removable under Immigration & Nationality Act § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of the aggravated felony of drug trafficking.

Music applied for deferral of removal under the Convention Against Torture, 8 C.F.R. § 1208.17(a), and testified in support of his application at a May 2, 2013 hearing before the Immigration Judge. Although he admitted that he does not know what he will face if he is removed to Bosnia and Herzegovina, he fears that he will be detained as an "internally displaced person," and interrogated and tortured by Serb officials because Vlasenica is under the control of the Serbs. In support of his claim, he submitted a report from the Council of Europe on its visit to Bosnia and Herzegovina in April, 2011, A.R. 224-301, and other evidence of country conditions. The IJ also considered the U.S. State Department's 2012 Human Rights Report on Bosnia and Herzegovina, A.R. 348-83.

2

The IJ granted CAT relief and deferred Music's removal to Bosnia and Herzegovina. As a threshold matter, the IJ determined that Music's cocaine conviction was a "particularly serious crime" under Matter of Y-L-, 23 I. & N. Dec. 270 (A.G. 2002), and that he was thus ineligible for statutory withholding of removal, see 8 U.S.C. § 1231(b)(3)(A).[1] The IJ reasoned that knowingly delivering 14.7 grams of cocaine and receiving a small amount of money and drugs for those efforts could not be considered "peripheral" under the Y-L- standard. With respect to deferral under the CAT, the IJ concluded that Music had met his burden of proof to show the likelihood of torture at the hands of government authorities in Bosnia and Herzegovina. The IJ reasoned that, because the country conditions evidence showed that prisoners are often subjected to physical mistreatment, including torture, it was reasonable to assume that Music, as a criminal deportee, would be detained upon his arrival and tortured, notwithstanding the "dearth of evidence" relating to how the government treats criminal deportees, A.R. 68.

The Department of Homeland Security appealed and Music cross-appealed. On December 2, 2013, the Board dismissed Music's appeal from the IJ's "particularly serious crime" determination, and reversed the IJ's grant of deferral of removal under the CAT. First, the Board agreed with the IJ that Music was not eligible for statutory withholding of removal. The Board applied the Y-L- standard and determined that Music's case did not demonstrate extraordinary and compelling circumstances to justify a

---

[1] Section 1231(b)(3)(A) provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). For refugees like Music, who suffered persecution in the past, there is a rebuttable presumption that their life or freedom would be threatened in the future, 8 C.F.R. § 1208.16(b)(1).

deviation from the presumption that his cocaine conviction was a "particularly serious crime." The Board reasoned that, as the deliveryman for a drug dealer, Music was not merely peripherally involved in the criminal activity, despite the fact that he was delivering small amounts of cocaine to the dealer's customers in exchange for small amounts of cocaine for his personal consumption.

Second, the Board held that the IJ committed clear error in granting Music deferral of removal under the CAT. The Board noted that, under Matter of J-F-F-, 23 I. & N. Dec. 912 (A.G. 2006), a grant of deferral of removal must rely upon a finding that each event in a hypothetical chain of events would be more likely than not to occur. The IJ's findings were clearly erroneous because the evidence of record did not address the treatment of criminal deportees at all, and thus did not establish that it was more likely than not that Music would be detained and tortured as a criminal deportee. The Board also held that the IJ clearly erred in his finding that it was more likely than not that the government of Bosnia and Herzogovina would torture Music because it had tortured others in the past. The Board noted that the record evidence indicated that the government does not torture its citizens and has made progress in curbing human rights abuses since the civil war in the 1990s, and that the law prohibits arbitrary arrest and detention. The Board noted that returnees are provided support, including limited reconstruction assistance and facilitation of the return to their original homes, and that the evidence does not reflect that they are arrested, detained, or tortured.

Music timely petitions for review. In his brief on appeal, he argues first that the agency erred in finding him ineligible for statutory withholding of removal because his possession with intent to distribute conviction is not a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii). Specifically, he argues that the Board incorrectly applied Matter of Y-L- to the facts of his case. Music next argues that the Board erred in its application of the clearly erroneous standard of review to the IJ's grant of deferral of removal under the CAT. Specifically, Music argues that the Board's review was actually less deferential than it should have been under the clearly erroneous standard.

Our jurisdiction to review the final order of removal in this case is limited to constitutional claims and questions of law because Music conceded before the agency, and does not dispute in his opening brief, that he is removable for having committed the aggravated felony of drug trafficking, see 8 U.S.C. § 1252(a)(2)(C)-(D). The Department of Homeland Security ("DHS") has argued that Music raises no legal or constitutional challenges to his removal order, and that, under Kaplun v. Att'y Gen. of U.S., 602 F.3d 260 (3d Cir. 2010), we lack jurisdiction altogether to review the Attorney General's discretionary determination that an alien's conviction constitutes a particularly serious crime. Respondent's Brief, at 15. We disagree. In Alaka v. Att'y Gen. of U.S., 456 F.3d 88 (3d Cir. 2006), we held that, because the Attorney General's discretion is not specified in § 1231(b)(3)(B)(ii), section 1252(a)(2)(B)(ii), which limits judicial review of the Attorney General's discretionary decisions, is "insufficient to pull the 'particularly serious crime' determination out from the broad class of reviewable decisions that require

5

the application of law to fact into the narrower class of decisions where judicial review is precluded." Id. at 101-02.

Moreover, Music's arguments that he satisfies the "peripheral involvement" requirement under Matter of Y-L-, and that the Board erred in its application of the clearly erroneous standard to the IJ's CAT grant, are both reviewable legal arguments, see 8 U.S.C. § 1252(a)(2)(D), in this circuit. In Denis v. Att'y Gen. of U.S., 633 F.3d 201, 213 (3d Cir. 2011), for example, we addressed similar legal arguments regarding the Board's affirmance of the IJ's determination that the alien had committed a particularly serious crime, including: "that the elements of [the alien's] crime of conviction -- as well as the actual underlying conduct -- did not entail a crime against a person, … that in ruling on this issue, the IJ improperly considered evidence of alleged offenses of which [the alien] was acquitted [and] …that the IJ improperly placed the burden [on the alien] to disprove that his offense was particularly serious," id. at 213. Kaplun, 602 F.3d 260, does not hold otherwise. Although we stated in Kaplun that we "do not have jurisdiction over discretionary decisions, and without any assertion of legal error, Kaplun is not entitled to relief" on his claim that his crime did not qualify as particularly serious, id. at 267, we then went on to review his "three legal arguments why he has not been convicted of a particularly serious crime [including that]: (1) the Government has waived the issue, having not brought it before the IJ; (2) the entire analysis rests upon the legally erroneous conclusion that his guilty plea admitted all the allegations in the information; and (3) the BIA decision ran contrary to actual Board precedent," id. (internal quotation marks and

6

brackets removed).  Kaplun does not hold that the "particularly serious crime" determination" falls under 8 U.S.C. § 1252(a)(2)(B)(ii) (discretionary determinations unreviewable); rather, in determining that we had jurisdiction to review the alien's three legal arguments, see 8 U.S.C. § 1252(a)(2)(D), we simply noted the general principle that factual and discretionary determinations continue to fall outside our jurisdiction after passage of the Real ID Act of 2005.  See Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006).  Accordingly, subject matter jurisdiction is not lacking here.

We will deny the petition for review.  The agency's determination that Music's cocaine conviction constituted a "particularly serious crime" was not the result of legal error.[2]  Aliens who have been convicted of a "particularly serious crime" are ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii).  The statute provides that "an alien who has been convicted of an aggravated felony … for which [he] has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime."  Id. at § 1231(b)(3)(B)(iv).  However, even where the term of imprisonment is less than 5 years, as it was in Music's case, the Attorney General is still authorized by the statute to decide that an alien has been convicted of a particularly serious crime, see id.  See also Denis, 633 F.3d at 214.  Where the Attorney General's interpretation of the phrase "particularly serious" is reasonable,

---

[2] In Lavira v. Att'y Gen. of U.S., 478 F.3d 158, 164 (3d Cir. 2007), overruled on other grounds by Pierre v. Att'y Gen. of U.S., 528 F.3d 180, 189 (3d Cir. 2008) (en banc), we held that whether an alien has been convicted of a particularly serious crime is a question of law that is reviewed de novo, "albeit with deference to the agency where appropriate."  This is the same de novo standard that we applied in Denis, 633 F.3d at 205-06 ("Denis contends that his crime of conviction … should not constitute a particularly serious crime… .  [This] assertion implicates 'constitutional claims or questions of law,' 8 U.S.C. § 1252(a)(2)(D), and we review the BIA's legal determinations *de novo*, subject to Chevron principles of deference.").

we will defer to the agency's expertise.  See id.  The interpretation of the term

"particularly serious crime" was established for drug trafficking offenses by the Attorney

General in 2002 in Matter of Y-L-, 23 I. & N. Dec. 270.  Cf. Miguel-Miguel v. Gonzales,

500 F.3d 941, 947 (9th Cir. 2007) (explaining that the Attorney General may overrule the

Board by issuing a published opinion).  Pursuant to Matter of Y-L-, the agency will

presume that a drug trafficking crime is a "particularly serious crime," but the

presumption may be overcome where in "the very rare case" an alien demonstrates

extraordinary and compelling circumstances that justify treating a particular drug

trafficking crime as not particularly serious.  23 I. & N. Dec. at 276.  The Attorney

General suggested, while not setting out the "precise boundaries," that the following

factors, if all of them have been established, could overcome the presumption that a drug

trafficking crime is "particularly serious," and thereby demonstrate extraordinary and

compelling circumstances:  (1) when only a small quantity of drugs is involved, (2) when

only a modest amount of money has been paid for the drugs, (3) when the alien has

merely peripheral involvement in the criminal activity or conspiracy, (4) when no

violence is involved, (5) when no terrorist activities or organized crime are involved, and

(6) when juveniles are not harmed.  Id. at 276-77.

In applying the Y-L- standard, the Attorney General ruled that an alien who

qualified for a "minor participant" sentencing adjustment based on his role as a courier

could not overcome the presumption because a drug courier "plays more than a

sufficiently active part in a distribution conspiracy…."  Id. at 278.  Notwithstanding this

determination, Music argues that he meets the requirement for peripheral involvement in that he was a mere deliveryman who did not receive anything for his actions except drugs for his personal use. He argues that he was "bit player," and that "90% of the actual criminal enterprise rests below the surface of [his] penultimate act to be the person handling the delivery under the orders of his superior," Petitioner's Brief, at 12-13. He argues further that no court has held that the conduct at issue here amounts to more than peripheral involvement.[3] We are not persuaded. In Matter of Y-L-, the Attorney General specifically found that a "drug courier" plays more than a sufficiently active part in a distribution conspiracy. 23 I. & N. Dec. at 278. It is true that the specific drug courier at issue was involved in a scheme designed to transport large quantities of cocaine, but the Attorney General also noted that each of the three aliens under consideration, including this drug courier, "was a direct actor or perpetrator – not merely a peripheral figure – in their respective criminal activities." Id. at 277. Thus, what matters is that Music was a direct actor who obtained cocaine from his dealer and delivered it to his dealer's customers. Under the Y-L- standard, he was not merely peripherally involved in the criminal activity, and, accordingly, we uphold the agency's determination that he is ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(A).

Turning to Music's second legal argument, we conclude that the Board properly applied the clearly erroneous standard in reversing the IJ and determining that Music did

---

[3] In Lavira, 478 F.3d 158, we remanded, holding that the agency misapplied the Y-L- standard where the alien's conviction was the result of his having accepted $10 from an undercover officer in order to buy crack cocaine for that officer, but there the agency failed to refer to the facts of the crime and made only a conclusory determination. See id. at 166. We remanded so that the agency could supply its reasoning. In Music's case, the agency's reasoning is clear enough.

not meet his burden of proof to show that it is more likely than not that he will face torture by or with the consent of the government of Bosnia and Herzegovina. The burden of proof is on the applicant to establish that it is more likely than not that he would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person … when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. at § 1208.18(a)(1). In Matter of J-F-F-, 23 I. & N. Dec. at 918, the agency had presumed that the alien would not receive medication while in the Dominican Republic based on the alien's "admittedly uninformed guess that he could not procure his medication in the Dominican Republic, and a single sentence about the general shortage there of mental health resources from the State Department's Country Report." Id. at 918. The Attorney General reversed the agency and denied the alien's application for deferral of removal, determining that "[b]oth [the alien's] uninformed speculation and the Immigration Judge's reference to a vague statement in the Country Report fall far short of proving that he is more likely than not to go without medication." Id. at 919. The Attorney General concluded that a grant of deferral of removal must rely upon a finding that each event in a hypothetical chain of events would be more likely than not to occur. See id. at 917. See also Denis, 633 F.3d at 218 (denying CAT protection where claim is based on chain of assumptions and fear of what might happen rather than evidence that meets alien's burden of demonstrating that it is

10

more likely than not that he will be subjected to torture by or with the acquiescence of a public official); In re: M-B-A-, 23 I. & N. Dec. 474, 479-80 (BIA 2002) (en banc) (same).

An Immigration Judge's determination concerning what is likely to happen to the alien if removed from the United States is factual and reviewed by the Board for clear error. Kaplun, 602 F.3d at 271; 8 C.F.R. § 1003.1(d)(3)(i). Facts determined by an Immigration Judge "shall be reviewed only to determine whether the findings … are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i). Here, the Board properly found that the IJ committed clear error. The IJ's grant of deferral rested on an assumption that criminal deportees to Bosnia and Herzegovina will be arrested, detained and tortured, but the evidence of record did not address the treatment of criminal deportees, thereby breaking the chain of assumptions necessary to reach this conclusion. The IJ even acknowledged that the record evidence did not address the treatment of criminal deportees, so the IJ was not able to conclude that Music was nevertheless likely to be detained and tortured upon his arrival in Bosnia and Herzegovina. See Matter of J-F-F-, 23 I. & N. Dec. at 917; Denis, 633 F.3d at 218; In re: M-B-A-, 23 I. & N. Dec. at 479-80.

Music argues that the IJ properly applied the law to the facts in granting deferral, and that the record provided sufficient evidence to find that it is more likely than not that he will be detained and tortured as a homeless, Bosnian Muslim. In his brief, he has recounted how he and his family were forced to flee invading Serb forces during the civil war, and he has emphasized the historical tension between the Serbs and Bosnian

11

Muslims, Petitioner's Brief, at 14-15. He argues that his country conditions evidence, including the Council of Europe Report for the Protection of Torture, Petitioner's Brief, at 16 & n.5, was sufficient proof that he will be detained and tortured. His country conditions evidence all make clear, he argues, that homeless displaced persons are detained, and criminal suspects are interrogated and tortured, see id. at 16-17. He argues that the IJ correctly assessed that torture of criminal suspects by the police is common, that his hometown of Vlasenica lies on the Serbian side of the border, that he will end up on that side, and that he will be detained as a homeless displaced person, see id. at 17. He argues that the IJ's "assumption" that the border patrol would use the same tactics of torture and physical mistreatment on homeless displaced persons that is used by police on criminal suspects cannot be overturned under the clearly erroneous standard, id.

We do not agree and find no legal error in the Board's application of the clearly erroneous standard in Music's case. The evidence of record does not address the treatment of criminal deportees, and does not reflect that they are arrested, detained, or tortured. We agree with Music that the record evidence indicates that displaced persons are vulnerable, but what they face upon repatriation is not arrest, detention, and torture, but rather "legal, social, economic and administrative obstacles" associated with resettlement. A.R. 197.[4] The accounts of police misconduct and human rights violations in the record are directed against criminal suspects, not newly-arrived deportees who are

---

[4] Counsel for Music has advised us that Music has returned to Bosnia and Herzegovina. He was "interrogated upon his return and authorities indicated they would continue to follow him," Petitioner's Brief, at 4 n.3, but apparently he was not detained and tortured.

not suspects in any criminal activity. We thus conclude that the Board was not less deferential than it should have been in reversing the IJ because the grant of deferral of removal must rely upon a finding that each event in a hypothetical chain of events would be more likely than not to occur, Matter of Y-L-, 23 I. & N. Dec. at 917. The Board committed no legal error in determining that the IJ's finding concerning what is likely to happen to Music if he is removed from the United States was clearly erroneous, Kaplun, 602 F.3d at 271; 8 C.F.R. § 1003.1(d)(3)(i). Because that finding was clearly erroneous, CAT relief properly was denied.

For the foregoing reasons, we will deny the petition for review.