**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1450
_____

MIERNA CHILEL-CHILEL,
                                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency No. 215-580-737)
Immigration Judge: John B. Carle
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on February 3, 2026

Before: HARDIMAN, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*

(Filed: March 6, 2026)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge.*

Mierna Chilel-Chilel petitions for review of a Board of Immigration Appeals decision rejecting her application for asylum, withholding of removal, and deferral of removal under the Convention Against Torture. We will deny the petition.

I

A native and citizen of Guatemala, Chilel-Chilel unlawfully entered the United States in April 2018. Just over three weeks later, the Department of Homeland Security sought to remove Chilel-Chilel from the country, charging her as removable under 8 U.S.C. §§ 1182(a)(7)(A)(i), (I) as an alien present in the United States without admission and without a valid entry document. In June 2018, Chilel-Chilel conceded removability and requested asylum, withholding of removal, and CAT protection. A merits hearing was held before an IJ in April 2021.

In support of her application, Chilel-Chilel testified that at sixteen she met Ezekiel Gonzalez, became pregnant, and married him. During the marriage, Gonzalez was physically, emotionally, and verbally abusive. Gonzalez would sometimes threaten that if Chilel-Chilel left him, he would either take away their daughter or kill her.

After the abuse, Chilel-Chilel separated from Gonzalez in 2014 and moved in with her parents, who lived about thirty minutes away. She returned two weeks later, but Gonzalez continued the abuse, so she fled once more to her parents' home, where she remained for two years. There, Gonzalez called and threatened Chilel-Chilel. Although Gonzalez never appeared in person, Chilel-Chilel claims he was "watching" her and that whenever she went out, "he would just turn up." A.R. 92–93, 102–03. Chilel-Chilel

2

attempted to file a police report in 2015, but the police told her she had to take care of the issue herself.

In early 2017, Chilel-Chilel moved in with her sister in Guatemala City, about seven hours away from her hometown. Several months later, Gonzalez called Chilel-Chilel at her sister's home. He said that "he knew where [Chilel-Chilel] was, that there was no way for [her] to hide, that wherever [she] went, he would find [her]." A.R. 93. He also said that Chilel-Chilel "better go back to his house or things were going to be really bad for [her], that he was going to kill [her]." A.R. 93–94. Chilel-Chilel refused and changed her phone number. Chilel-Chilel testified that Gonzalez never went to her sister's home.

In September 2017, Chilel-Chilel returned to her parents' home and filed for child support. In response, Gonzalez twice made death threats against her—once on a public street when Gonzalez was with two other people and approached Chilel-Chilel, and another time when two men approached Chilel-Chilel on his behalf. Chilel-Chilel's last contact with Gonzalez was in 2018, and she does not know his whereabouts. Chilel-Chilel's daughter remains in Guatemala with her parents, and Gonzalez has not attempted to see her.

After considering this evidence, the IJ denied Chilel-Chilel's applications for asylum, withholding of removal, and CAT protection. Chilel-Chilel's asylum and withholding of removal claims failed for three reasons: (1) her past persecution had no nexus to any protected status; (2) her proposed social groups ("nuclear family member of Ezekiel Perez Gonzalez," "Guatemalan women viewed as property," "Guatemalan

3

women in a domestic relationship," and "Guatemalan women") were not cognizable; and (3) she failed to establish that she could not relocate within Guatemala. The IJ denied Chilel-Chilel's CAT claim because she failed to establish a clear probability of future torture or that the Guatemalan government would consent or acquiesce to that torture.

On appeal, the BIA agreed with the IJ's holding that Chilel-Chilel's proposed social group of "Guatemalan women" was not cognizable. The BIA also concluded that Chilel-Chilel waived her challenge to whether two other proposed social groups ("nuclear family member of Ezekiel Perez Gonzalez," and "Guatemalan women viewed as property") were cognizable. The BIA adopted a different tack for her final proposed social group, "Guatemalan women in a domestic relationship," however. Instead of simply affirming the IJ's finding that this social group was not cognizable (as it did with "Guatemalan women"), the BIA "assum[ed] the cognizabil[ity] of this group," and that Chilel-Chilel "demonstrated past persecution under the INA." A.R. 3. Even so, the BIA determined that the government rebutted Chilel-Chilel's presumption that she had a well-founded fear of future persecution because she could safely relocate within Guatemala. As for Chilel-Chilel's CAT claim, the BIA affirmed the IJ's denial based on the relocation finding and the determination that Chilel-Chilel did not establish a clear probability of future torture with the consent or acquiescence of the government.

This timely petition followed.

II[1]

Chilel-Chilel contests the BIA's rejection of her application for asylum and withholding of removal, and CAT protection. We address each in turn.

A

To be eligible for asylum, Chilel-Chilel must demonstrate that she is "unable or unwilling" to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see id.* § 1158(b)(1).[2] Because the BIA assumed that "Guatemalan women in a domestic relationship" was a cognizable social group and that Chilel-Chilel had tied her past persecution to her membership in that group, Chilel-Chilel was presumed to have a well-founded fear of future persecution on that same basis. 8 C.F.R. § 1208.13(b)(1); *see also id.* § 1208.16(b)(1)(i) (same for withholding). But the BIA found that presumption rebutted since Chilel-Chilel could avoid future persecution because she would reasonably "be able to relocate safely within Guatemala." A.R. 2–3; *see also* 8 C.F.R. §§ 1208.13(b)(1)(i)(B), 1208.16(b)(1)(i)(B).[3]

---

[1] We have jurisdiction under 8 U.S.C. § 1252(a)(1). The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15.

[2] If Chilel-Chilel cannot meet the standard for asylum, she cannot meet the higher standard for withholding of removal. *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021).

[3] Chilel-Chilel contends that the BIA did not apply the right standard in its relocation analysis. She claims that the BIA only determined that relocation would be safe, not safe *and* reasonable, as the regulations require. 8 C.F.R. § 1208.13(b)(1)(i)(B). Though the BIA did not mention the word "reasonable" in its analysis, it did explain that "given [all]

5

Chilel-Chilel argues that substantial evidence does not support the BIA's factual finding that she could successfully relocate. Under that "highly deferential" standard, the BIA's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 590 U.S. 573, 583–84 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)). Substantial evidence supports the BIA's finding that Chilel-Chilel, who successfully relocated in the past, could do so again.

In upholding the IJ's relocation determination, the BIA relied on several factors cited by the IJ in concluding that relocation within Guatemala would be reasonable in Chilel-Chilel's circumstances—in particular, her prior successful relocation and the presence of family members who can assist her. Chilel-Chilel lived with her parents in 2014 after separating from Gonzalez, and then again from 2015 to 2017. Moreover, as detailed by the BIA, from early 2017 to September 2017, Chilel-Chilel lived with her sister in Guatemala City—located six or seven hours from her hometown. While the BIA noted that Gonzalez made threatening phone calls during this time, he never went to her family members' homes or pursued her.

The BIA also noted that Gonzalez had not expressed any recent interest in Chilel-Chilel—who last saw him in 2018 and did not know his whereabouts—and that her

---

the evidence presented," it would "uphold the [IJ's] finding that [Chilel-Chilel] would be able to relocate safety within Guatemala." A.R. 3. The BIA's analysis also included several reasons why relocation within Guatemala would be safe in Chilel-Chilel's circumstances, such as her past ability to relocate and supportive family. So the BIA's failure to mention the word "reasonableness" in its relocation analysis, is, at worst, harmless error. *Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011).

daughter continued to live with her parents in Guatemala and Gonzalez had not made any attempts to contact her. Because the BIA supported its factual determinations with "'specific, cogent' reasons such that [its] conclusions 'flow in a reasoned way from the evidence of record and are [not] arbitrary and conjectural in nature,'" *Toure v. Att'y Gen.*, 443 F.3d 310, 316 (3d Cir. 2006) (quoting *Dia v. Ashcroft*, 353 F.3d 228, 250 (3d Cir. 2003) (en banc)), we cannot say that any reasonable adjudicator would be compelled to conclude otherwise.

B

Chilel-Chilel also contends that the BIA erred in denying her CAT protection. To qualify for CAT protection, Chilel-Chilel must show that it is "more likely than not" that she will be tortured if removed to Guatemala and that her torture will occur "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 92 (3d Cir. 2021) (citations omitted). She can do neither.

We again review the BIA's factual findings for substantial evidence, and the record here does not compel the finding that Chilel-Chilel will face torture if she returns to Guatemala, defined as "an extreme form of cruel and inhuman treatment." 8 C.F.R. § 1208.18(a)(2). As the IJ found and the BIA affirmed, Chilel-Chilel's torture claim relies on a series of unlikely assumptions: Gonzalez would learn of her return, have an interest in harming her, find her, harm her, and that this harm would constitute torture. *See Denis v. Att'y Gen.*, 633 F.3d 201, 218 (3d Cir. 2011) (finding a similar chain of contingencies fell short). Chilel-Chilel has not established that each of these events is more likely than

7

not to take place, or even that Gonzalez remains interested in her; she has had no contact with him since 2018. Moreover, the BIA's relocation finding reduces the likelihood that Chilel-Chilel will face "torture" if she returns to Guatemala. 8 C.F.R. § 1208.16(c)(3)(ii) (evidence of possible relocation is relevant to assessing whether applicant has shown likelihood of torture).

Nor can Chilel-Chilel establish that Guatemalan officials would consent or acquiesce to her torture. She failed to establish that Gonzalez is a government official. And although the police dismissed Chilel-Chilel when she sought assistance after Gonzalez threatened her, substantial evidence supports the BIA's determination that this fact does not mean the government would acquiesce to Chilel-Chilel's torture.

\* \* \*

For the foregoing reasons, we will deny the petition.